# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                 No. CR 13-2643 JB

DAVID PACHECO,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Objections to Presentence Report, filed June 6, 2014 (Doc. 116)("Objections").  The Court held a sentencing hearing on June 30, 2014.  The primary issues are: (i) whether there is sufficient evidence to individually link Defendant David Pacheco to the five firearms that were located in a locked, enclosed trailer in his place of business to support a 2-level enhancement under United States Sentencing Guidelines § 2K2.1(b)(1)(A) for possessing three to seven firearms; (ii) whether the application of § 2K2.1(b)(4), relating to whether any firearms are stolen, constitutes impermissible double counting; (iii) whether there is sufficient evidence to establish that Pacheco used or possessed a firearm in connection with another offense to support a 4-level enhancement under § 2K2.1(a)(6); (iv) whether the Court should modify the Presentence Investigation Report, disclosed May 2, 2014 ("PSR"), to reflect Pacheco's factual assertion that he did not threaten his family members; and (v) whether the Court may credit Pacheco for the time that he has served in federal custody.  The Court will sustain in part and overrule in part Pacheco's Objections.  The Court holds: (i) because Pacheco pled guilty to possessing one of the firearms located in the green duffle bag, which contained four other firearms, he cannot credibly argue that he did not

have knowledge of and access to the additional firearms, and the Court will overrule this objection; (ii) because Pacheco's base offense level was calculated under subsection (a)(2), rather than (a)(7), the application of subsection (b)(4)(A) is not impermissible double counting, as it is the enhancement that takes into account that the firearm was stolen as part of § 2K2.1, which encompasses more than stolen firearm offenses, the Court will overrule this objection; (iii) because the firearm to which Pacheco pled guilty to possessing was located in the same proximity as 2.5 net grams of heroin, digital scales, and drug paraphernalia, there is sufficient evidence to establish that Pacheco used or possessed a firearm in connection with another felony offense, that is, the presence of the firearm had the potential of facilitating a drug trafficking offense, and the Court will overrule this objection; (iv) the Court will add one sentence in the PSR to reflect Pacheco's factual dispute, and will thus sustain in part and overrule in part his objection regarding whether he threatened a family member; and (v) because the Bureau of Prisons ("BOP"), and not the Court, has the authority to credit Pacheco with the time he has served in federal custody, the Court will overrule this objection, but will make certain all dates in custody are accurate so that the BOP can make an adequate calculation of detention.

## FACTUAL BACKGROUND

In the Plea Agreement, filed February 3, 2014 (Doc. 100), Pacheco admitted the following facts:

> On March 14, 2013, I possessed at my place of business located at 321 San Pedro SE, Albuquerque, New Mexico, a firearm, to wit: a Survival Arms, model AR-7 Explorer .22 caliber rifle with serial number C327864.  I knew or had reasonable cause to know that the firearm had been stolen.  Further, I have been made aware, and do not dispute, that the firearm was not manufactured in New Mexico, therefore any possession was in and affecting interstate commerce.

Plea Agreement ¶ 6, at 3.

## PROCEDURAL BACKGROUND

On February 3, 2014, Pacheco pled guilty to an Information charging a violation of 18 U.S.C. §§ 922(j) and 924(a)(2), that being possessing a firearm knowing or having reasonable cause to believe it was stolen.  See Plea Agreement ¶ 3, at 2.  In the PSR, the United States Probation Office ("USPO") calculated Pacheco's base offense level at 24, pursuant to § 2K2.1(a)(2), and applied the following enhancements: (i) a 2-level enhancement pursuant to § 2K2.1(b)(1)(A) for unlawfully possessing a total of six firearms; (ii) a 2-level enhancement pursuant to § 2K2.1(b)(4), because at least one firearm was stolen; and (iii) a 4-level enhancement pursuant to § 2K2.1(b)(6), for using or possessing any firearm in connection with another felony offense.  See PSR ¶¶ 24-29, at 8-10.  Pacheco objects to the application of subsections (b)(1)(A), (b)(4), and (b)6).  See Objections ¶¶ 2-6, at 1-3.  The Court will describe these objections, with the USPO's response, in its analysis.

## LAW REGARDING CONSTRUCTIVE POSSESSION OF FIREARMS UNDER U.S.S.G. § 2K2.1(b)(1)

Under U.S.S.G. § 2K2.1(b)(1), a defendant's offense level should be increased by 2 or more levels when the "offense involved three or more firearms."  U.S.S.G. § 2K2.1(b)(1).  A 2-level enhancement applies when the offense involved three to seven firearms; a 4-level enhancement applies when the offense involved eight to twenty-four firearms; a 6-level enhancement applies when the offense involved twenty-five to ninety-nine firearms; an 8-level enhancement applies when the offense involved 100-199 firearms; and a 10-ten level enhancement applies when the offense involved 200 or more firearms.  See U.S.S.G. § 2K2.1(b)(1)(A)-(E).  The commentary to that section explains that a court should "count only those firearms that were unlawfully sought to be obtained, unlawfully possessed, or unlawfully

distributed, including any firearm that a defendant obtained or attempted to obtain by making a false statement to a licensed dealer."  U.S.S.G. § 2K2.1 cmt. n.5.

"To establish possession, the government must show the defendant actually or constructively possessed the guns."  United States v. Gambino-Zavala, 539 F.3d 1221, 1229 (10th Cir. 2008)(citing United States v. Houston, 364 F.3d 243, 248 (5th Cir. 2004)).  Cf. United States v. Ledford, 443 F.3d 702, 713-14 (10th Cir. 2005)("'Possession' under [a federal statute prohibiting felons from possessing firearms] may be either actual or constructive.").  "To prove a joint occupant constructively possessed contraband, the government merely must show the defendant had knowledge of and access to the contraband."  United States v. Gambino-Zavala, 539 F.3d at 1229 (citing United States v. Ledford, 443 F.3d at 714).  "'It is not necessary to show that the defendant intended to exercise . . . dominion or control, nor is it necessary to show that the defendant actually owned the weapons -- mere possession is enough.'"  United States v. Gambino-Zavala, 539 F.3d at 1229 (alterations in original)(quoting United States v. Ledford, 443 F.3d at 714).

In United States v. Ruckman, 59 F. App'x 280 (10th Cir. 2003)(unpublished),[1] the United

---

[1]United States v. Ruckman is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).  The Court finds that United States v. Ruckman, United States v. Bertollini, 286 F. App'x 582 (10th Cir. 2008)(unpublished), United States v. Fent, 199 F. App'x 724 (10th Cir. 2006)(unpublished),

States Court of Appeals for the Tenth Circuit reviewed the district court's application of U.S.S.G. § 2K2.1(b)(1)(e), which, under a previous version of the sentencing guidelines, provided a 5-level enhancement for possessing between twenty-five and forty-nine firearms. See 59 F. App'x at 282. In affirming the district court, the Tenth Circuit stated:

> [A]n individual is considered to constructively possess an item when he or she knowingly holds the power and ability to exercise dominion and control over the property. In situations involving joint occupancy, . . . more is required to establish constructive possession than dominion and control. To prove constructive possession where there is joint occupancy, the government must present direct or circumstantial evidence to show some connection or nexus individually linking defendant to the firearms. The requisite nexus is established where there is some evidence to support the plausible inference that defendant had knowledge of and access to the firearms.

59 F. App'x at 282 (citations omitted). Even though the firearms were located in the defendant's bedroom, which he shared with his wife, the Tenth Circuit concluded that the United States established the "requisite nexus between the defendant and the firearms located" in his bedroom:

> One of the firearms was found under the Ruckmans' bed, next to the 7mm rifle defendant admitted possessing. The government also presented evidence that one firearm was found leaning against a dresser in the bedroom and three firearms were found hanging above the bed. Defendant was carrying the key to the locked gun safe. The locked gun safe and an unlocked gun safe contained a total of twenty firearms. Defendant's close proximity to the firearms, the open manner in which many of the firearms were stored, his possession of the key to the locked gun safe, and the proximity of the firearms to the firearm he pled guilty to possessing are more than sufficient to establish his connection to the firearms.
>
> Defendant contends the district court failed to consider the fact that his wife also occupied the bedroom and that she subsequently bartered several of the identified firearms to pay her own legal bills. Defendant presents no evidence to support his contention that his wife's joint ownership of the firearms precludes the district court from concluding he possessed the firearms. Indeed, possession, not ownership, is the dispositive inquiry. Defendant also argues the fact that the

_____

United States v. Feugate, 26 F. App'x 838 (10th Cir. 2001)(unpublished), United States v. Dudley, 509 F. App'x 739 (10th Cir. 2013)(unpublished), and United States v. Brown, 212 F. App'x 747 (10th Cir. 2007)(unpublished), have persuasive value with respect to material issues, and will assist the Court in its preparation of this Memorandum Opinion and Order.

government failed to identify which safe was unlocked by the key defendant possessed undercuts the district court's finding. This point too is of no import considering defendant does not dispute that the key found on his person unlocked the only locked safe.

59 F. App'x at 282-83.

In United States v. Bertollini, No. CR 06-1348 JB, 2007 WL 5231705 (D.N.M. Aug. 20, 2007)(Browning, J.), aff'd, 286 F. App'x 582 (10th Cir. 2008)(unpublished), the defendant objected to a 4-level enhancement under § 2K2.1(b)(1)(B), for an offense involving between eight and twenty-four firearms, because the officers found seven of the nine firearms attributed to the defendant at his wife's house, and because he and his wife were separated. See 2007 WL 5231705, at *4-6. At the sentencing hearing, the defendant's wife testified regarding the firearms that were in her house:

> Leslie testified that, when she and Bertollini separated, she told him she was taking six of the firearms that were seized from her house so that they would not get lost and "that they would be with [her] and when he was ready for them, he knew where to get them." Leslie testified that: "I mean they (six of the firearms seized from 3471 Cerrillos Road) were his he could look at them anytime he wanted and he knew that so you know." Leslie also testified that she owned the .38 found in her night stand and seized from her house. With regard to Bertollini's access to her home, Leslie testified that, when he visited her, he would sometimes be given a key to her house, and that, frequently, they would not lock the house so it was often unnecessary for him to have a key. Additionally, Leslie testified that, on the day the weapons were seized from her house, her, Bertollini, and a few law-enforcement agents all went to the back of the house, to the master bedroom, to look for the firearms.

> Bertollini testified that the .38 seized from the 3471 Cerrillos Road residence belonged to Leslie. At the hearing, Bertollini referenced the .38 as "Leslie's .38" and stated that "when I asked her to give it to the FBI agents[,][s]he wasn't going to relinquish it because it was hers."

2007 WL 5231705, at *5-6 (citations to the record omitted). The Court sustained in part and overruled in part the defendant's objection to the 4-level enhancement under § 2K2.1(b)(1). See 2007 WL 5231705, at *10. The Court found that the defendant constructively possessed six of

the seven weapons that officers seized from his wife's residence; it determined that the United

States established, "by a preponderance of the evidence, that Bertollini bought the weapons

seized at 3471 Cerrillos Road, that he knew Leslie was keeping them for him, and that he knew

they were in the house," and that the defendant "had general knowledge of the location of and

access to the seized firearms."  2007 WL 5231705, at *10.  The Court determined, however, that

the defendant did not have "the ability to exercise dominion and control over" his wife's .38

caliber revolver, and, thus, the Court did not attribute the .38 caliber revolver to the defendant for

purposes of § 2K2.1(b)(1)(B).  2007 WL 5231705, at *11.  The Court ultimately applied the

§ 2K2.1(b)(1)(B) 4-level enhancement, because there were six weapons at the defendant's wife's

house along with two weapons seized from his truck, totaling the necessary eight firearms for the

enhancement.  See 2007 WL 5231705, at *11.

      The Tenth Circuit affirmed the Court's holding:

> The defendant was arrested on April 12, 2006, by FBI agents, acting on a tip, in Santa Fe, New Mexico.  We would observe that, when arrested, the defendant clearly "possessed" the two firearms found in his vehicle.  And when asked by the arresting FBI agents if he had any other firearms, the defendant stated that he did have other firearms which were stored in the home of his estranged wife in New Mexico.  At the same time, the defendant gave consent to the agents to search his wife's home, and later, he assisted the agents in locating the firearms stored in his estranged wife's residence.  Such is in our view sufficient to support the district court's holding that the defendant "constructively possessed" a total of eight firearms, two in his car and six in his estranged wife's residence, when arrested in New Mexico as a fugitive from a felony charge in Idaho.  In support of our holding, see United States v. Ruckman, 59 Fed. Appx. 280 (10th Cir. 2003).  In that case we held that a finding by the district court that the defendant "constructively possessed" 25 firearms found in a bedroom he shared with his wife was not "clear error."

United States v. Bertollini, 286 F. App'x 582, 584 (10th Cir. 2008)(unpublished).

<u>**LAW REGARDING U.S.S.G. § 2K2.1(b)(6)**</u>

U.S.S.G. § 2K2.1(b)(6) provides a 4-level enhancement to a defendant's base offense level for a sentence under U.S.S.G. § 2K2.1 "if the defendant used or possessed any firearm or ammunition in connection with another felony offense."  U.S.S.G. § 2K2.1(b)(6).  Application note 14 to U.S.S.G. § 2K2.1 specifies that the use or possession is "in connection with" a different felony "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense."  U.S.S.G. § 2K2.1, cmt. n.14(A).  "The plain and commonly understood meaning of 'facilitate' is to make easier."  <u>United States v. Marrufo</u>, 661 F.3d 1204, 1207 (10th Cir. 2011)(citing <u>United States v. Gandy</u>, 36 F.3d 912, 914 (10th Cir. 1994)(recognizing that "facilitate" means "to make easier"); Black's Law Dictionary 668 (9th ed. 2009)(defining "facilitate" as "[t]o make the commission of a crime easier")).

> In <u>Smith v. United States</u>, 508 U.S. 223 . . . (1993), on which Application Note 14(A) is based, U.S.S.G. app. C amend. 691, the Supreme Court interpreted the term "in relation to."  <u>Id.</u> at 238 . . . .  It stated: "the gun at least must facilitate, or have the potential of facilitating, the [other] offense" and "its presence or involvement cannot be the result of accident or coincidence."  <u>Id.</u> (quotations and brackets omitted); <u>see</u> <u>also</u> <u>United States v. Taylor</u>, 413 F.3d 1146, 1154 (10th Cir. 2005); <u>United States v. Constantine</u>, 263 F.3d 1122, 1126 (10th Cir. 2001).

<u>United States v. Marrufo</u>, 661 F.3d at 1207-08.

The Tenth Circuit has held on several occasions that physical proximity between a weapon and narcotics can be sufficient to satisfy the requirements of U.S.S.G. § 2K2.1(b)(6).  <u>See</u>, <u>e.g.</u>, <u>United States v. Bunner</u>, 134 F.3d 1000, 1006 (10th Cir. 1998); <u>United States v. Gomez-Arrellano</u>, 5 F.3d 464, 467 (10th Cir. 1993).  In <u>United States v. Bunner</u>, the Tenth Circuit explained how physical proximity could establish a nexus between a handgun and a drug trafficking offense: "Handguns are widely recognized as a tool of the drug dealers['] trade. Accordingly, a weapon's proximity to narcotics may be sufficient to provide the nexus necessary

to enhance a defendant's sentence under § 2K2.1(b)(5)."[2]  134 F.3d at 1006.

The United States Court of Appeals for the Eighth Circuit has noted that, when a person ventures out into public with a firearm and even a small amount of drugs, "there are many ways in which the weapon can facilitate the drug offense and dangerously embolden the offender." United States v. Regans, 125 F.3d 685, 687 (8th Cir. 1997).  The Eighth Circuit has also held that a firearm facilitates or has the potential to facilitate felony-drug possession in the same manner as felony-drug trafficking -- by protecting a defendant or his drugs.  See United States v. Bell, 310 F.3d 604, 605-606 (8th Cir. 2002)(per curiam).  The Tenth Circuit reached a similar conclusion in an unpublished opinion.  See United States v. Fent, 199 F. App'x 724, 727 (10th Cir. 2006)(unpublished)(holding that the enhancement applied where the defendant possessed a firearm in connection with possessing methamphetamine).  In United States v. Fent, a deputy sheriff pulled the defendant over for speeding, and then arrested him after he failed to produce a driver's license or proof of insurance, and a database check of his name and social security number revealed his license was suspended.  See 199 F. App'x at 725-26.  The deputy impounded the defendant's truck, and discovered a small amount of methamphetamine and a firearm in a black bag in the defendant's truck during an inventory search.  See 199 F. App'x at 726.  The defendant was found guilty after a jury trial of being a felon in possession of a firearm, but was never charged with any drug offense.  See 199 F. App'x at 726.  Nonetheless, the district court found, by a preponderance of the evidence, that the firearm was possessed in connection with felony possession of methamphetamine.  See 199 F. App'x at 727.  As the district court noted, "'the availability of the gun in such close proximity to the methamphetamine was

---

[2]U.S.S.G. § 2K2.1(b)(5) is now U.S.S.G. § 2K2.1(b)(6).  See U.S.S.G. § 2K2.1.

sufficient evidence of a connection between the firearm and the possession of methamphetamine, which is a felony offense in the state of Oklahoma.'"   199 F. App'x at 727 (quoting with approval the district court).  The Tenth Circuit affirmed.  See 199 F. App'x at 727.

There is no requirement that a certain amount of narcotics be recovered for the enhancement under U.S.S.G. § 2K2.1(b)(6) to apply.  See United States v. Condren, 18 F.3d 1190, 1999 (5th Cir. 1994)(holding that the 4-level enhancement "may be based on any felony, including, as here, felony possession of a small amount of drugs"); United States v. Cunningham, No. CR 06-2493 JB, 2008 WL 6049940, at *8 (D.N.M. Oct. 29, 2008)(Browning, J.). Accordingly, courts have applied the 4-level enhancement in cases where small amounts of narcotics were recovered.  See, e.g., United States v. Washington, 340 F.3d 222, 231 (5th Cir. 2003)(rejecting the defendant's argument that "the quantity of drugs seized was too minute for anything other than personal use and that the government failed to establish a connection between the firearms and the drugs," because a controlling Fifth Circuit case -- United States v. Condren, 18 F.3d 1190 (5th Cir. 1994) -- held that "a defendant possessing the firearm 'in connection with' either drug possession or distribution triggered the sentence enhancement"); United States v. Green, 255 F. App'x 473, 474 (11th Cir. 2007)(unpublished)(upholding enhancement for having firearm and small amount of drugs for personal use); United States v. Moran-Paz, 35 F. App'x 93, 93-94 (4th Cir. 2002)(unpublished)(upholding enhancement based upon finding that defendant carried firearm to protect his small amount of drugs).

In United States v. Justice, 679 F.3d 1251 (10th Cir. 2012), the Tenth Circuit stated that it agrees "with several other circuits that have held that possession of a firearm may facilitate an offense by emboldening the possessor to commit the offense."  679 F.3d at 1255.  In that case, the defendant "was carrying methamphetamine on his person," the "firearms were within easy

reach, and they were loaded"; thus, the Tenth Circuit concluded that "[a] reasonable person could find that the firearms gave him a sense of security emboldening him to venture from his home with drugs that someone might wish to take from him by force."  679 F.3d at 1255.  The Tenth Circuit cautioned, however, that "emboldenment is not always present when firearms are near drugs."  679 F.3d at 1256 (citing United States v. Jeffries, 587 F.3d 690, 691-695 (5th Cir. 2009)(rejecting the emboldenment theory when the defendant took a gun from another man after a violent altercation, got into his car, picked up his girlfriend, was stopped by the police almost immediately thereafter, and police found the gun on the driver's seat and a rock of cocaine on the floor behind the seat, because, even if the cocaine belonged to the defendant, the evidence was insufficient to establish that the gun emboldened him); United States v. West, 643 F.3d 102, 115-16 (3d Cir. 2011)(rejecting application of emboldenment theory when marijuana found in glove compartment and revolver found in backpack in trunk of defendant's car); United States v. Smith, 535 F.3d 883, 886 (8th Cir. 2008)(holding that emboldenment theory not applicable because defendant did not venture from home into public with the drugs or firearms)). The Tenth Circuit emphasized that the factual setting must support the emboldenment theory, but concluded that,

> when the defendant is out and about, with drugs on his person and a loaded firearm within easy reach, one can infer from the proximity of the weapon to the drugs is not coincidental and that the firearm "facilitated, or had the potential of facilitating," the drug offense by emboldening the possessor.

United States v. Justice, 679 F.3d at 1256.

An enhancement under U.S.S.G. § 2K2.1(b)(6) may be applied even though the felony in connection with which the firearm is possessed was not an offense for which the defendant was convicted.  See United States v. Gambino-Zavala, 539 F.3d 1221, 1230 n.3 (10th Cir. 2008).  In

United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit held that, even after United States v. Booker, 543 U.S. 220 (2005), as long as the guidelines are considered advisory, facts relevant to sentencing still need be proved only by a preponderance of the evidence.  See United States v. Magallanez, 408 F.3d at 684-685.  See also United States v. Dalton, 409 F.3d 1247, 1252 (10th Cir. 2005)("Booker therefore does not render judicial fact-finding by a preponderance of the evidence per se unconstitutional.").

The Court has noted that the 4-level enhancement has four distinct elements and that "[t]he United States must prove that the defendant: (i) used or possessed; (ii) any firearm or ammunition; (iii) in connection with; (iv) another felony offense."  United States v. Kepler, No. CR. 11-1946 JB, 2012 WL 592422, at *5 (D.N.M. Feb. 14, 2012)(Browning, J.)(citing U.S.S.G. § 2K2.1(b)(6)).  In that case, the United States and the defendant stipulated that § 2K2.1(b)(6)'s 4-level enhancement did not apply, and the Court accepted the stipulation, because there was a lack of evidence regarding whether the defendant or some other occupant in the house owned the locked box that contained methamphetamine and a handgun.  See 2012 WL 592422, at *6.  The Court explained that,

> [g]iven that the Court has no ability to gather or present evidence to support a sentencing enhancement, the Court is dependent in many ways on the United States to assess the strength of its arguments and evaluate whether it can prove that a particular enhancement applies.  While it is possible that the methamphetamine is attributable to Kepler, the evidence before the Court does not support a factual finding to that effect by a preponderance of the evidence. Without proof that Kepler committed another felony offense, the United States cannot establish that an enhancement under U.S.S.G. § 2K2.1(b)(6) applies.

2012 WL 592422, at *6.

<u>ANALYSIS</u>

The Court will sustain in part and overrule in part Pacheco's Objections.  The Court will overrule Pacheco's objection to the 2-level enhancement under § 2K2.1(b)(1)(A), because he pled guilty to possessing one of the firearms located in the green duffle bag, which also held four other firearms, demonstrating that he had knowledge of and access to the four other firearms.  The Court will overrule Pacheco's objection that § 2K2.1(b)(4) is impermissible double counting, because his base offense level was calculated under subsection (a)(2) rather that (a)(7), and because the § 2K2.1(b)(4) enhancement properly takes into account that the firearm was stolen.  The Court will overrule Pacheco's objection to § 2K2.1(b)(6), because there is sufficient evidence to establish that Pacheco used or possessed a firearm in connection with another offense.  The Court will sustain in part and overrule in part Pacheco's objection that he threatened a family member, and will add one sentence to the PSR to reflect Pacheco's factual dispute.  Finally, the Court will make certain that all dates of Pacheco's time in custody are accurate, but will overrule his objection requesting the Court to credit him with federal time served, because it is the BOP, and not the Court, that has the authority to credit Pacheco with the time he has served in federal custody.

I.      **THERE IS SUFFICIENT EVIDENCE TO LINK PACHECO TO THE FIVE FIREARMS THAT WERE LOCATED IN THE LOCKED ENCLOSED TRAILER, WHICH SUPPORTS THE 2-LEVEL ENHANCEMENT UNDER § 2K2.1(b)(1)(A).**

Pacheco objects to the 2-level enhancement under § 2K2.1(b)(1)(A), because he asserts that "[t]here has been no showing that Mr. Pacheco possessed more than one firearm, the AR-7

.22 caliber survival rifle to which possession he pled guilty."  Objections ¶ 2, at 1; id. ¶ 4, at 2.[3]
He asserts that "[t]he other firearms noted were not in his possession and may have been
possessed by any one of a number of other owners or familiars of the business where they were
found."  Objections ¶ 2, at 1.  In the Addendum to the Presentence Report, dated June 16, 2014
("Addendum"), the USPO points to paragraph 9 of the PSR, which explains that, "[d]uring the
execution of the search warrant, numerous items of evidence were seized, including six firearms.
It was determined that the defendant, David Rodger Pacheco Jr., had dominion and control over
the property located at the hydraulics shop."  PSR ¶ 9, at 5.  See Addendum at 1-2 (pointing to
PSR ¶ 9, at 5).

In United States v. Ruckman, the Tenth Circuit reviewed the district court's application
of U.S.S.G. § 2K2.1(b)(1)(e), which, under a previous version of the sentencing guidelines,
provided a five-level enhancement for possessing between twenty-five and forty-nine firearms.
See 59 F. App'x at 282.  In affirming the district court, the Tenth Circuit stated:

> [A]n individual is considered to constructively possess an item when he or she
> knowingly holds the power and ability to exercise dominion and control over the
> property.  In situations involving joint occupancy, . . . more is required to
> establish constructive possession than dominion and control.  To prove
> constructive possession where there is joint occupancy, the government must
> present direct or circumstantial evidence to show some connection or nexus
> individually linking defendant to the firearms.  The requisite nexus is established
> where there is some evidence to support the plausible inference that defendant had
> knowledge of and access to the firearms.

59 F. App'x at 282 (citations omitted).  The Court relied on United States v. Ruckman in United
States v. Bertollini, in which the defendant objected to a 4-level enhancement under
§ 2K2.1(b)(1)(B), for an offense involving between eight and twenty-four firearms, because the

---

[3]Pacheco included two identical objections regarding the 2-level enhancement under
§ K2.1(b)(1)(A).

officers found seven of the nine firearms attributed to the defendant at his estranged wife's house.  See 2007 WL 5231705, at *4-6.  The Court sustained in part and overruled in part the defendant's objection to the 4-level enhancement.  See 2007 WL 5231705, at *10.  The Court found that the defendant constructively possessed six of the seven weapons that officers seized from his wife's residence; it determined that the United States established, "by a preponderance of the evidence, that Bertollini bought the weapons seized at 3471 Cerrillos Road, that he knew Leslie was keeping them for him, and that he knew they were in the house," and that the defendant "had general knowledge of the location of and access to the seized firearms."  2007 WL 5231705, at *10.  The Court determined, however, that the defendant did not have "the ability to exercise dominion and control over" his wife's .38 caliber revolver, and, thus, the Court did not attribute the .38 caliber revolver to the defendant for purposes of § 2K2.1(b)(1)(B). 2007 WL 5231705, at *11.  The Court ultimately applied the § 2K2.1(b)(1)(B) 4-level enhancement, because there were six weapons at the defendant's wife's house along with two weapons seized from his truck, totaling the necessary eight firearms for the enhancement.  See 2007 WL 5231705, at *11.  The Tenth Circuit affirmed the Court's judgment, because there was sufficient evidence to support the Court's holding that the defendant constructively possessed eight firearms.  See United States v. Bertollini, 286 F. App'x at 584.

Because Pacheco objects that there was joint occupancy of the hydraulics shop, the United States must do more than establish that Pacheco had dominion and control of the shop; it must "present direct or circumstantial evidence to show some connection or nexus individually linking defendant to the firearms.  The requisite nexus is established where there is some evidence to support the plausible inference that defendant had knowledge of and access to the firearms."  United States v. Ruckman, 59 F. App'x at 282.  The Court concludes that facts in the

PSR, to which Pacheco did not object, establish this plausible inference.  The PSR explains that there were five firearms found in the green duffle bag, which was located inside the stolen enclosed trailer at the hydraulics shop, while a sixth firearm was located inside a safe that was inside a storage shed next to the stolen enclosed trailer.  See PSR ¶¶ 12-13.  One of the firearms that was located in the green duffle bag -- the Survival Arms, model AR-7 Explorer, .22 caliber semiautomatic rifle with serial number C327864 -- is the weapon to which Pacheco pled guilty to possessing.  See PSR ¶ 12(v); Plea Agreement ¶ 6, at 3, filed February 3, 2014 (Doc. 100).  The Court concludes that, because Pacheco pled guilty to possessing one of the firearms in the green duffle bag in the enclosed trailer, the logical conclusion and plausible inference is that he also had knowledge of and access to the other firearms located in the same duffle bag.  The Court will overrule the objection.

## II.   THE APPLICATION OF § 2K2.1(b)(4), RELATING TO WHETHER ANY FIREARMS ARE STOLEN, DOES NOT CONSTITUTE IMPERMISSIBLE DOUBLE COUNTING.

Pacheco objects to the PSR's application of the 2-level enhancement under § 2K2.1(b)(4), which applies if any firearm was stolen.  He contends that, because he entered a guilty plea to "knowingly possessing a stole firearm or ammunition, a survival arms, model AR-7 Explorer, .22 caliber rifle serial number C327864," applying the § 2K2.1(b)(4) 2-level enhancement would be "double counting."  Objections ¶ 3, at 2.  He points to United States v. Reyes Pena, 216 F.3d 1204, 1209 (10th Cir. 2000), which states that "[d]ouble counting occurs when the same conduct on the part of the defendant is used to support separate increases under separate enhancement provisions which necessarily overlap, are indistinct, and serve identical purposes."  216 F.3d at 1209 (citations omitted)(internal quotation marks omitted).  In the Addendum, the USPO responds that, in United States v. Reyes Pena, the Tenth Circuit

determined that the two enhancements that the district court had applied -- for the age of the victim and use of force -- did not constitute impermissible "double counting," because the enhancements served distinct purposes and are aimed at different harms.  Addendum at 2.  It asserts that it is likewise not impermissible double counting "to count the defendant's unlawful possession of a firearm as a basis for sentencing him under U.S.S.G. § 2K2.1 and then enhancing the offense level to reflect the firearm was stolen, pursuant to U.S.S.G. § 2K2.1(b)(4)."  Addendum at 2.

Section 2K2.1 is the proper sentencing guideline for the "unlawful receipt, possession, or transportation of firearms or ammunition; prohibited transactions involving firearms or ammunition."  U.S.S.G. § 2K2.1 (title case and emphasis omitted).  Section 2K2.1(b)(4) states that, "[i]f any firearm (A) was stolen, increase by **2** levels; or (B) had an altered or obliterated serial number, increase by **4** levels."  U.S.S.G. § 2K2.1(b)(4) (emphasis in original).  The commentary to the enhancement explains:

> If the only offense to which § 2K2.1 applies is 18 U.S.C. § 922(i), (j), or (u), or 18 U.S.C. § 924(l) or (m) (offenses involving a stolen firearm or stolen ammunition) and the base offense level is determined under subsection (a)(7), do not apply the enhancement in subsection (b)(4)(A).  This is because the base offense level takes into account that the firearm or ammunition was stolen.  However, if the offense involved a firearm with an altered or obliterated serial number, apply subsection (b)(4)(B).

U.S.S.G. § 2K2.1 cmt. n.8(A).  Pacheco pled guilty to 18 U.S.C. § 922(j) for knowingly possessing a stolen firearm or ammunition, but the USPO did not calculate the base offense level under subsection (a)(7); the USPO noted in the PSR that Pacheco has "been convicted of at least two crimes of violence," warranting a base offense level of 24, pursuant to subsection (a)(2), rather than the base offense level of 12 under subsection (a)(7).  PSR ¶ 24, at 9.  Because

Pacheco's base offense level was not calculated pursuant to subsection (a)(7), the comments that direct the Court not to apply the 2-level enhancement under subsection (b)(4) do not apply.

The Tenth Circuit rejected Pacheco's double-counting argument in <u>United States v. Blackbourn</u>, 344 F. App'x 481 (10th Cir. 2009)(Hartz, J.).  In that case, the defendant pled guilty to count one of an indictment, which charged him with possession of a stolen firearm, in violation of 18 U.S.C. §§ 922(j) and § 924(a)(2).  <u>See</u> 344 F. App'x at 482.  The district court had calculated the defendant's base offense level at 14, under § 2K2.1(a)(6), because he was unlawfully using marijuana when he possessed the firearm, and then applied the 2-level enhancement under § 2K2.1(b)(4)(A), because the firearms were stolen.  <u>See</u> 344 F. App'x at 482.  The defendant argued that the 2-level enhancement under subsection (b)(4) "amounted to impermissible double counting because the activity relevant" to the enhancement "had already been taken into consideration when he pleaded guilty to possession of a stolen firearm under § 922(j)."  344 F. App'x at 483.  The Tenth Circuit rejected this argument:

> Mr. Blackbourn misconceives the relationship between the Sentencing Guidelines and the criminal code when he argues that the stolen-firearm enhancement constitutes double counting because possession of a stolen weapon is an element of his § 922(j) offense of conviction.  Sentencing courts apply USSG § 2K2.1 to a number of firearm offenses, some involving stolen firearms, some not.  Section 2K2.1(b)(4)(A) is the provision that distinguishes between offenses involving stolen firearms and those that do not.  Application of that provision does not involve double counting of the fact that Mr. Blackbourn's offense was possession of stolen firearms; on the contrary, application of § 2K2.1(b)(4)(A) is the means by which the guidelines calculation takes into account the stolen-firearm element of his offense in the first instance.

> To be sure, § 2K2.1(b)(4)(A) is not the only means by which § 2K2.1 takes into account the stolen-firearm element of a firearms offense.  Application note 8 for § 2K2.1(b)(4) recognizes that in some circumstances when the base offense level is determined by § 2K2.1(a)(7), that provision implicitly takes into account that the firearm was stolen, and therefore § 2K2.1(b)(4)(A) does not apply.  But Mr. Blackbourn's offense level was not determined by using § 2K2.1(a)(7).

In <u>United States v. Goff</u>, 314 F.3d 1248, 1249-50 (10th Cir. 2003), we held that if the offense of conviction is possession of a stolen firearm, in violation of § 922(j), the application of § 2K2.1(b)(4) is proper so long as the defendant's base offense level is not determined under § 2K2.1(a)(7). We reasoned that application note 8 (then numbered as note 12) "explicitly applies only to those defendants whose base offense level is determined pursuant to § 2K2.1(a)(7)" and it makes no such exception for defendants whose base offense level is determined by a different subsection. <u>Id.</u> at 1250. Accordingly, the district court's imposition of the two-level enhancement under § 2K2.1(b)(4) was correct.

344 F. App'x at 483-84 (footnote omitted).

The Court will overrule Pacheco's objection, because the PSR calculated his base offense level under subsection (a)(2), and not under subsection (a)(7), and because the 2-level enhancement under subsection (b)(4) is not impermissible double counting, but is rather the provision within § 2K2.1 that accounts for the fact that he pled guilty to a stolen firearms offense. <u>See</u> <u>United States v. Feugate</u>, 26 F. App'x 838, 839 (10th Cir. 2001)(unpublished)(Tacha, J.)(upholding the 2-level enhancement under subsection (b)(4) when the defendant had pled guilty to possession of a stolen firearm in violation of 18 U.S.C. §922(j) and the base offense level was calculated under § 2K2.1(a)(2)); <u>United States v. Dudley</u>, 509 F. App'x 739, 740 (10th Cir. 2013)(unpublished)(Hartz, J.)(upholding the 2-level enhancement under subsection (b)(4) when the defendant had pled guilty to the stolen-firearm charge under 18 U.S.C. § 922(j) and the base offense level was calculated under § 2K2.1(a)(6)).

**III.   THERE IS SUFFICIENT EVIDENCE TO ESTABLISH THAT PACHECO USED OR POSSESSED A FIREARM IN CONNECTION WITH ANOTHER OFFENSE, <u>SUPPORTING THE 4-LEVEL ENHANCEMENT UNDER § 2K2.1(b)(6)</u>.**

Pacheco objects to the following two paragraphs in the PSR:

28.   It reasonably appears the defendant possessed the firearms found at his business to protect his automobile theft operation and his drug trafficking operation. Therefore, the defendant possessed the firearms in connection with the felony crimes of Receiving or Transferring Stolen Vehicles, Altering or Changing

> Engine or Other Numbers, Receiving Stolen Property and Possession with Intent
> to Distribute Heroin.
>
> 29.     Pursuant to U.S.S.G. § 2K2.1(b)(6), if the defendant (B) used or
> possessed any firearm or ammunition in connection with another felony offense,
> increase by four levels.

PSR ¶¶ 28-29, at 10.  See Objections ¶¶ 5-6, at 2-3 (objecting to PSR ¶¶ 28-29, at 10).  Pacheco

contends that "the firearms were all discovered in a locked trailer on the premises of the

Defendant's business" and that they "were not readily available for use as some other rather

bulky items would have had to have been moved before they could have been accessed."

Objections ¶5, at 2-3 (citing Photograph, filed June 6, 2014 (Doc. 116-1)).  Pacheco notes that

paragraph 29 relates to paragraph 28, "but bears the penalty assessment provision," and asks that

the Court delete both paragraphs.  Objections ¶ 6, at 3.  The USPO points to paragraph 27 of the

PSR, which states:

> In this case it was found the defendant was running an automobile theft operation
> at his place of business where a total of 9 stolen motor vehicles were found (some
> with removed Vehicle Identification Numbers), along with stolen titles and stolen
> property.  Five of the firearms associated with this case were found inside a stolen
> enclosed trailer.  The stolen trailer also contained stolen property, 2.5 net grams of
> heroin, two digital scales and drug paraphernalia.  The defendant was formally
> charged in the 2nd Judicial District Court, in Albuquerque, New Mexico, case
> number CR201303107, with ten counts of Receiving or Transferring a Stolen
> Vehicle; seven counts of Altering or Changing Engine or Other Numbers; two
> counts of Receiving Stolen Property (Over $500 Not More Than $2,500), all
> felony offenses.  This case remains pending.

PSR ¶ 27, at 9-10.  The USPO contends that "[i]t reasonably appears the defendant possessed the

firearms found at his business to protect his automobile theft operation and his drug trafficking

operation; therefore, a four level increase under U.S.S.G. § 2K2.1(b)(6), was accurately applied."

Addendum at 3.

Section 2K2.1(b)(6) provides for a 4-level increase if the defendant "used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense."   U.S.S.G. § 2K2.1(b)(6)(B).   The application note explains that subsection (b)(6)(B) applies "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense or another offense, respectively."   U.S.S.G. § 2K2.1 cmt. n.14(A).   The application notes go on to explain that, "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia," the 4-level enhancement "is warranted because the presence of the firearm has the potential of facilitating another felony offense or another offense, respectively."   U.S.S.G. § 2K2.1 cmt. n.14(B).   The Tenth Circuit has held that physical proximity between a weapon and narcotics can be sufficient to satisfy the requirements of § 2K2.1(b)(6).   See United States v. Dominguez, 381 F. App'x 869, 872 (10th Cir. 2010)("[W]hen the other felony offense is a drug offense, the provision applies if 'a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia.'"); United States v. Bunner, 134 F.3d 1000, 1006 (10th Cir. 1998)("[A] weapon's proximity to narcotics may be sufficient to provide the nexus necessary to enhance a defendant's sentence under § [2K2.1(b)(6)].").   There is no requirement that a certain amount of narcotics be recovered for the enhancement under U.S.S.G. § 2K2.1(b)(6) to apply.   See United States v. Cunningham, No. CR 06-2493 JB, 2008 WL 6049940, at *8 (D.N.M. Oct. 29, 2008)(Browning, J.)(applying the 4-level enhancement for possessing a handgun in connection with the felony offense of possessing crack cocaine and noting that, when police stopped the defendant "driving around with two baggies of crack cocaine on him and a gun near at hand," the

Court would not disregard the "the natural inference that someone carrying drugs and a gun together is armed to protect his drugs, particularly when that person is out in public").

Pacheco asks the Court to delete paragraphs 28 and 29; in his view, because "the firearms were all discovered in a locked trailer" and were "not readily available for use as some other rather bulky items would have had to have been moved before they could have been accessed," Objections ¶ 6, at 3, he did not "use[] or possess[]" the firearms "in connection with another felony offense," U.S.S.G. § 2K2.1(b)(6)(B). Although it may have taken some work for Pacheco to retrieve the firearms, the standard does not require immediate access to the firearms, so long as the firearms have the potential of facilitating another felony offense or another offense. Paragraph 27 in the PSR states that the enclosed trailer included five firearms, including the one to which Pacheco pled guilty to possessing, as well as 2.5 net grams of heroin, two digital scales, and drug paraphernalia. Although Pacheco has, in a different objection, contended that "[t]he other firearms noted were not in his possession and may have been possessed by any one of a number of other owners or familiars of the business where they were found," Objections ¶ 2, at 1, the Court has previously noted that Pacheco pled guilty to possessing one of the firearms located in the green duffle bag, which was inside the enclosed trailer. Based on Pacheco's possession of the stolen firearm, the United States needs only establish that the firearm had the potential of facilitating another felony offense, such as a drug trafficking offense related to the heroin and digital scales located inside the enclosed trailer. The Court concludes that, because the weapon was found in close proximity to the heroin and digital scales, the 4-level enhancement under § 2K2.1(b)(6) is warranted.

The enhancement under § 2K2.1(b)(6) may apply even when the firearm forms part of the defendant's conviction. In <u>United States v. Gambino-Zavala</u>, 539 F.3d 1221

(10th Cir. 2008), the Tenth Circuit affirmed the district court's application of the § 2K2.1(b)(6) enhancement when the defendant pled guilty to unlawful possession of a firearm and ammunition by an illegal alien after police found the shotgun with which he was convicted in a bedroom closet in a shared apartment as well as a large amount of heroin in a kitchen cupboard in the apartment.   See 539 F.3d at 1224-25; id. at 1230.   The Tenth Circuit upheld the enhancement, because there was sufficient evidence to find that: (i) the defendant had access to all areas of the apartment; (ii) the defendant had knowledge of the heroin, because it was located in "an area of the apartment that a joint occupant would regularly access"; (iii) the defendant intended to distribute the heroin, because there was a large total quantity divided into many small containers; and (iv) there was a sufficient nexus between the shotgun and the drugs, because the "shotgun had the potential to facilitate illegal drug transactions by helping [the defendant] protect himself and his drug supply," even though the shotgun was located in a different part of the apartment.  539 F.3d at 1230.

Similarly here, the Court concludes that the 4-level enhancement is appropriate, because the heroin and digital scales were in the same trailer as the firearm to which he admitted possessing, establishing that Pacheco knew of and had access to both.  In addition, the firearm had the potential to facilitate illegal drug transactions by helping Pacheco protect himself and his drug supply, at least the drug supply located with the firearms in the locked trailer.  The Court will overrule the objection.

## IV.    THE COURT WILL MODIFY PARAGRAPH 39 OF THE PSR TO REFLECT PACHECO'S FACTUAL ASSERTION.

Pacheco objects to the portion of the PSR that states: "'The defendant was threatening to kill his mother, sister, and himself . . . .'"  Objections ¶ 7, at 3 (quoting PSR ¶ 39, at 11).  He

- 23 -

asserts that, "although there was a family dispute, it never rose to the level of any overt threats to any family member.  This paragraph should be amended."  Objections ¶ 7, at 3.  The USPO responds:

> The information contained in this paragraph was obtained from an offense report prepared by the Bernalillo County Sheriff's Department.  The probation office is not in the position to amend an offense report.  The defendant's version of the prior offense, as noted above, is added to the presentence report by way of the addendum.

Addendum at 3.  The Court will sustain in part Pacheco's objection and add the following sentence to the end of paragraph 39: "The defendant asserts, however, that although there was a family dispute, it never rose to the level of any overt threats to any family member."  At the sentencing hearing, Pacheco agreed that this approach satisfied his concerns.  Accordingly, the Court otherwise overrules his objection.

## V.   THE COURT WILL OVERRULE PACHECO'S OBJECTION ASKING THE COURT TO CREDIT HIS TIME IN FEDERAL CUSTODY, BECAUSE THE BUREAU OF PRISONS, AND NOT THE COURT, HAS AUTHORITY TO CALCULATE SENTENCING CREDIT.

Pacheco objects to the portion of the PSR that states: "'The defendant has been in state custody since the date of arrest on March 21, 2013.'"  Objections ¶ 1, at 1 (quoting PSR ¶ 7, at 4).  He asserts that he "spent the bulk of this time in the custody of the United States Marshal pursuant to Writs of Habeas Corpus ad Prosequendum" and, thus, "requests that the Court make a finding that he was in federal custody for this period."  Objections ¶ 1, at 1 (citing 18 U.S.C. § 3585(b); United States v. Wilson, 503 U.S. 329 (1992)).  The USPO responds:

> The United States Probation Office verified the defendant's time in custody with the United States Marshal Service and the Federal Bureau of Prison's Designation and Computation Center (November Team).  Because the defendant appeared pursuant to a Writ of Habeas Corpus, his primary custodian is the state of New Mexico (2nd Judicial District Court-Bernalillo County, case number CR201303107) and therefore, he is not eligible for any federal credit time served,

> unless his sentence is ordered to run concurrent to any sentence he receives from
> the State of New Mexico.  (457 days, or 1 year and 3 months, from March 21,
> 2013 to May 20, 2014).

Addendum at 1.  The Court will ensure that the PSR accurately states the length of time Pacheco has been in custody, but will overrule the objection, because, ultimately, it is the Bureau of Prison, and not the Court, that determines whether Pacheco is eligible for any federal credit time served.  See United States v. Bertollini, No. CR 06-1348 JB, 2007 WL 5231705, at *8 (D.N.M. Aug. 20, 2007)(Browning, J.)("The Court notes that, under 18 U.S.C. § 3585(b)(2), it is without jurisdiction to award credit for time served in custody before sentencing at sentencing, and that the Bureau of Prisons, not the district court[], is authorized to determine and award sentencing credit after sentencing."); United States v. Brown, 212 F. App'x 747, 755 (10th Cir. 2007)(unpublished)("[A] sentencing court is without jurisdiction to award credit under § 3585(b) for time served in prior custody at sentencing."); United States v. Jenkins, 38 F.3d 1143, 1144 (10th Cir. 1994)(stating that a district court cannot apply § 3585(b) at sentencing).

Pacheco's remaining objections are overruled as moot.[4]

**IT IS ORDERED** that the Defendant's Objections to Presentence Report, filed June 6, 2014 (Doc. 116), are sustained in part and overruled in part.

---

[4]Pacheco objected to a typographical error in the PSR, see Objections ¶ 8, at 3, and the USPO corrected the PSR to replace "2998" with the correct year "1998," Addendum at 4. Pacheco also objected to a portion of the PSR that stated that he had a 2008 Chevrolet Cobalt Coupe registered in his name, because, according to Pacheco, the vehicle is registered "in his name and that of his estranged girlfriend Meagan Fitzgerald.  He is quite confident that, under the circumstances, the vehicle is now but a memory."  Objections ¶ 10, at 4.  The USPO responded that it added Pacheco's clarification "by way of the addendum."  Addendum at 3.  At the sentencing hearing, Pacheco indicated that he was satisfied with the way the USPO had handled the objections.  Pacheco also withdrew one objection in the Notice of Withdrawal of a Certain Objection to Presentence Report, filed June 26, 2014 (Doc. 120).

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Damon P. Martinez
  United States Attorney
Jack Burkhead
Shana B. Long
Holland S. Kastrin
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Charles E. Knoblauch
Charles E. Knoblauch, P.C.
Albuquerque, New Mexico

     *Attorney for the Defendant*